UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

MICHAEL D. HUGHES,

                  Plaintiff,

v.                                                      Case No.  5:01-cv-381-Oc-10GRJ

JO ANNE B. BARNHART, Commissioner of
Social Security,

                  Defendant.

_____/

## ORDER

Plaintiff appeals from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for a period of disability and disability insurance benefits. (Doc. 1.) The Commissioner has answered (Doc. 23), and both parties have filed briefs outlining their respective positions. (Docs. 29 & 32.)  For the reasons discussed below, the Commissioner's decision is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

## I.  PROCEDURAL HISTORY

On June 2, 1999, Plaintiff filed an application for a period of disability and Disability Insurance Benefits (Doc. 105) alleging a disability onset date of June 15, 1996. (R.116.) Plaintiff's application was denied initially and again upon reconsideration. (R.54-57, 79-80, 83-84.)   Thereafter, Plaintiff timely pursued the administrative remedies available before the Commissioner, and requested a hearing before an Administrative Law Judge  (the "ALJ"). On the same day, the Plaintiff filed a Title XVI

application for Supplemental Security Income payments. The ALJ conducted Plaintiff's administrative hearing on February 23, 2000. (R. 62-68.) On April 12, 2000 the ALJ issued a partially favorable decision denying Plaintiff's application for a period of disability and disability insurance benefits under Title II of the Social Security Act, but granting Supplemental Security Income benefits under Title XVI of the Act beginning February 23, 2000 (the filing date of the SSI application). (R. 58-68.)  The ALJ found that because the claimant failed to establish disability on or before the date he was last insured for disability benefits, March 31, 1998, he was not eligible for Title II benefits, but he was "disabled" for purposes of Title XVI benefits. (R. 62-68.)

The Plaintiff then requested the Appeals Council to review the hearing decision concerning the disability onset date.  The Appeals Council denied Plaintiff's request for review of the ALJ's decision denying him a period of disability and disability insurance benefits. (R. 99-100.) Plaintiff filed this action on November 8, 2001. (Doc. 1.)  Due to numerous "inaudibles" on the hearing tape, on April 30, 2002 this Court remanded the case for further administrative proceedings in accordance with the sixth sentence of section 205(g) of the Social Security Act. (Doc. 14.).) A new hearing was held on August 27, 2002 in Gainesville, Florida, at which time the Plaintiff appeared and testified. (R. 23-53.) Plaintiff was represented by N. Albert Bacharach, Jr. throughout the course of the hearing. On November 4, 2002 the ALJ issued a decision that was partially favorable to the Plaintiff, denying his application for a period of disability and disability insurance benefits, but granting Supplemental Security Income benefits as of February 2000. Plaintiff filed exceptions to the ALJ's decision (R. 301-16) but the Appeals Council

declined to assume jurisdiction. Plaintiff has, therefore, exhausted his administrative
remedies and the matter is now ripe for review.

## II.  <u>STANDARD OF REVIEW</u>

The Commissioner's findings of fact are conclusive if supported by substantial
evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more
than merely create a suspicion of the existence of a fact, and must include such
relevant evidence as a reasonable person would accept as adequate to support the
conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the
district court will affirm, even if the reviewer would have reached a contrary result as
finder of fact, and even if the reviewer finds that the evidence preponderates against the
Commissioner's decision.[3] The district court must view the evidence as a whole, taking
into account evidence favorable as well as unfavorable to the decision.[4] However, the
district court will reverse the Commissioner's decision on plenary review if the decision
applies incorrect law, or if the decision fails to provide the district court with sufficient

---

[1] See 42 U.S.C. § 405(g).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

reasoning to determine that the Commissioner properly applied the law.[5]   The law

defines disability as the inability to do any substantial gainful activity by reason of any

medically determinable physical or mental impairment that can be expected to result in

death, or has lasted or can be expected to last for a continuous period of not less than

twelve months.[6] The impairment must be severe, making Plaintiff unable to do previous

work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a

claimant is working at a substantial gainful activity, the claimant is not disabled.[9]

Second, if a claimant does not have any impairment or combination of impairments

which significantly limits the physical or mental ability to do basic work activities, then

claimant does not have a severe impairment and is not disabled.[10] Third, if a claimant's

impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P,

Appendix 1, the claimant is disabled.[11] Fourth, if a claimant's impairments do not

prevent claimant from doing past relevant work, claimant is not disabled.[12] Fifth, if a

claimant's impairments (considering RFC, age, education, and past work) prevent

---

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act; Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

[12] 20 C.F.R. § 404.1520(e).

claimant from doing other work that exists in the national economy, then claimant is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[17] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

---

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). *See Also* Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (*internal citations omitted*).

[16] Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

[17] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

[18] Walker at 1003.

The ALJ may use the grids as a framework to evaluate vocational factors so long as the ALJ introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[21]

## III.  SUMMARY OF THE RECORD EVIDENCE

At the time of the hearing, Plaintiff was fifty-five years old. (R. 25.) Plaintiff has a general equivalency degree (R.25) and previously worked as a truck driver. (R. 27.) Plaintiff stated that he discontinued working in 1996 due to neck and upper and lower back pain. (R. 29.)

After reviewing the record, including Plaintiff's testimony and the medical records from several health care providers, the ALJ determined that as of February 23, 2000 - the date Plaintiff file his application for SSI benefits - Plaintiff suffered from degenerative disc disease of the cervical, thoracic and lumbar spine, as well as osteoarthritis of the lumbar spine, both knees, and both shoulders. (R. 10, 12.) Furthermore, the ALJ found that as of February 23, 2000 Plaintiff did not have the capacity to perform any jobs existing in significant numbers in the national economy.  (R. 12.)

---

[19] Wolfe at 1077-78.

[20] See id.

[21] See Doughty at 1278 n.2.

However, to be eligible for Disability Insurance Benefits under Title II of the Act, Plaintiff must also establish that his disability began on or before the expiration of his insured status, which for Plaintiff was March 31, 1998.  Based upon the lack of evidence in the record that Plaintiff was disabled prior to March 31, 1998, the ALJ found that Plaintiff was not eligible for Disability Insurance Benefits under Title II of the Act.

Although the Plaintiff claims that the disability onset date is June 15, 1996, the Plaintiff did not seek or receive any medical treatment until May, 1998, after the expiration of Plaintiff's insured status.  When Plaintiff did seek medical treatment from Dr. Belanger at Shands Hospital in May, 1998, it was related to complaints of chest pressure and wheezing. (R. 161.)  Dr. Belanger diagnosed Plaintiff with emphysema and bronchitis and referred Plaintiff to Dr. Hill at the Shands Cardiovascular Clinic for a cardiac catheterization, the results of which were normal. (R. 166 & 205.)  In June, 1998, Plaintiff sought medical treatment for neck and back pain, at which time Dr. Belanger ordered x-rays that revealed moderate degenerative disc disease and arthritis of the cervical, thoracic and lumbar spine. (R. 216.)  Plaintiff later sought medical care from Dr. Atchison, who diagnosed Plaintiff with chronic neck, thoracic and lumbar pain with underlying diffuse idiopathic skeletal hyperostosis, as well as sleep dysfunction and probable depression. (R. 172-173.) Plaintiff attended only two physical therapy sessions before discontinuing the recommended physical therapy. (R. 203).  In July, 1999, Plaintiff sought treatment from Dr. Staud, a rheumatologist at Shands Hospital complaining of pain in his shoulders and knees and occasional pain in his elbows and hands. (R. 198.)  Dr. Staud concluded that Plaintiff had osteoarthritis of the knees and shoulders, as well as of the spine. (R. 199.)

## IV. <u>DISCUSSION</u>

Plaintiff's primary argument is that the ALJ improperly analyzed Plaintiff's subjective complaints of pain by failing to make a proper credibility determination. Relying upon medical information that post dates the Plaintiff's date last insured, the Plaintiff argues that there was sufficient medical evidence that supported Plaintiff's subjective complaints of pain.  For the following reasons, the Court disagrees and concludes that the ALJ's decision was fully supported by substantial evidence and that the ALJ's analysis was correct.

While the Plaintiff argues that the ALJ erred by discounting Plaintiff's credibility prior to March 31, 1998 - the date last insured - the Plaintiff misinterprets the ALJ's decision and analysis in this case.  The ALJ did not, as suggested by Plaintiff, simply make a credibility determination, but rather denied Plaintiff's claim for Title II benefits at step two, finding that prior to March 31, 1998 the Plaintiff did not meet his burden of proof of establishing that he had any impairment or combination of impairments which significantly limited his physical or mental ability to do basic work activities. While step two of the sequential analysis is a low threshold there, nonetheless, must be some evidence of the Plaintiff's impairments.  Thus, the analysis by the ALJ properly was upon whether there was some evidence of a severe impairment prior to the date last insured and not upon whether Plaintiff's pain was a significant non-exertional impairment that would be considered at step four as part of the determination of Plaintiff's RFC. As such, by solely focusing upon the pain standard, Plaintiff's argument misses the point.

To be sure, the ALJ discussed the evidence of record - as well as the lack thereof - in determining whether there was any evidence to support a finding at step two that Plaintiff's pain was indeed sufficient to satisfy the low threshold at step two. The ALJ properly concluded that the Plaintiff had failed to establish that prior to March 31, 1998 the Plaintiff's unsubstantiated claims of pain were severe to pass step two muster. As support for his conclusion at step two that the Plaintiff had not met his burden, the ALJ noted that Plaintiff had not seen any doctors for back complaints or pain from the alleged onset date in June 1996 to the date last insured. Nor had Plaintiff been prescribed any medications at any time prior to the date last insured. Indeed, Plaintiff had not even sought treatment from any doctor since the early 1980's. The ALJ properly found that the complete absence of any medical treatment sought by Plaintiff prior to the expiration of his insured status, combined with the Plaintiff's testimony that he could perform a wide range of activities, were sufficient reasons for finding that Plaintiff's allegations of complete inability to work prior to March 31, 1998 were not fully credible.

Plaintiff does not challenge the fact that he was never treated for any medical problems concerning back pain prior to the date last insured but instead relies upon three pieces of medical evidence, each of which concerns medical care *after* the date last insured. These records consist of: (1) a July 17, 1998 report from Dr. Atchison whose impression of Plaintiff's condition was diffuse idiopathic skeletal hyperostosis with chronic stiffness[22] (R. 179-182), (2) an X-ray conducted on June 4, 1998 disclosing

---

[22] Characterized by excessive bone growth along the sides of the vertebrae of the spine.

that Plaintiff suffered from "more extensive degenerative disease involving the thoracic spine" (R. 156), and (3) an August 11, 1998 note from a physical therapist, Santiago Casanova. Plaintiff argues that these medical records are sufficient to establish the existence of disability during the period prior to the expiration of his insured status. The Court disagrees.

Relying upon *Boyd v. Heckler*[23] the Plaintiff argues that a treating physician's opinion is still entitled to significant weight even if the physician did not treat the claimant until after the relevant determination date.  While "medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition"[24] the medical evidence "must refer clearly to the relevant period of disability and not simply express an opinion as to the claimant's current status."[25] None of the three pieces of medical evidence Plaintiff relies upon address or contain opinions as to the existence or severity of back problems prior to the date last insured. In addition to the fact that these medical reports fail to refer to the Plaintiff's condition during the period of disability - and merely diagnose the Plaintiff's current condition - none of this medical evidence contains restrictions or limitations on Plaintiff's activities.

For example, although the July 17, 1998 report from Dr. Atchison discloses a diagnosis of "diffuse idiopathic skeletal hyperostosis with chronic stiffness" the report does not contain any functional limitations and does not reference Plaintiff's condition during the period prior to the date last insured. Further, although the report confirms that

---

[23] 704 F.2d 1207, 1211 (11th Cir. 1983)

[24] Herrera v. Barnhart, 379 F.Supp. 2d 1103, 1108 (C.D. Cal. 2005)(citations omitted).

[25] Vitale v. Apfel, 49 F.Supp. 2d 137, 142 (E.D. N.Y. 1999).

the Plaintiff presented with constant cervical pain Dr. Atchison confirmed that Plaintiff had never previously sought any medical care until after the date last insured. Lastly, after examination of the Plaintiff Dr. Atchison did not place any limitations or restrictions on Plaintiff's activities. Plaintiff was given a prescription and instructed to pursue physical therapy. As discussed above, the Plaintiff attended only two physical therapy sessions before discontinuing any further therapy.

With regard to the June 4, 1998 x-ray, the x-ray was reviewed by Dr. Atchison and relied upon in his report. The x-ray, itself, discloses only that the Plaintiff had moderate degenerative disease with fusion involving multiple levels and segments of the thoracic spine. The x-ray is a diagnosis of the Plaintiff's condition after the date last insured and not evidence of the existence of Plaintiff's condition prior to the date last insured or the severity of Plaintiff's condition prior to the date last insured. As such, the x-ray fails to address the critical issue of whether the Plaintiff was disabled prior to the date last insured.

Lastly, the evaluation by the physical therapist simply confirms the diagnosis by Dr. Atchison and that in August 1998, at the time of the evaluation, the Plaintiff had limited range of motion. Although the report is of limited value because it is not from a doctor, the evaluation does not refer to the Plaintiff's condition during the relevant insured period and makes no reference as to any degree of severity of Plaintiff's back problems prior to the date last insured.

Moreover, even assuming that the x-ray could be interpreted to suggest that the Plaintiff had the degenerative disc disease before March 31, 1998, there is nothing in the x-ray or the report from Dr. Atchison that references or even suggests that if Plaintiff

11

had degenerative disc disease prior to the date last insured that the condition was severe or disabling. Therefore, Plaintiff's reliance upon these medical records after the date last insured to establish the existence of a disabling condition prior to March 1998 is speculative at best.

The task of this Court is not to substitute its judgment for that of the ALJ nor is it appropriate for the Court to speculate as to whether Plaintiff's back problems prior to March 1998 were disabling. Rather, this Court is limited to examining whether the ALJ based his decision upon substantial evidence in the record. The Court concludes that the ALJ did just that. The ALJ properly noted and analyzed the medical evidence post dating March 1998 and concluded that it was insufficient to overcome the fact that prior to March 1998 Plaintiff had not sought any medical treatment for back problems, had not been prescribed any medication for pain and had failed to present any medical evidence that he had a medically determinable severe impairment on or before March 31, 1998.

The Court, therefore, concludes that the ALJ adequately evaluated the evidence - including the medical evidence post dating March 31, 1998 - and expressly articulated his reasons based upon the evidence (or lack thereof) that supports his conclusion that the Plaintiff's allegations of complete inability to work prior to March 1998 were not credible. Accordingly, for these reasons, the Court does not find any reversible error in the ALJ's analysis.

## V. <u>CONCLUSION</u>

In view of the foregoing, it is hereby **ORDERED** that the decision of the Commissioner is **AFFIRMED** and the Clerk is directed to enter judgment accordingly and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on August 25, 2006.

GARY R. JONES
United States Magistrate Judge

Copies to:
        All Counsel